HARRY E. STEVENSON *et al.*

*v.*

DAVID L. CAMPBELL *et al.*

*Opinion filed April 17, 1900—Rehearing denied June 8, 1900.*

1. FRAUD—*continued possession of grantor may be considered on question of good faith.* Though one in possession of premises may, by delivering a deed thereto, estop himself from relying upon his continued possession as notice to subsequent purchasers that he claims title, yet such possession is a circumstance to be considered in connection with other facts on the question of notice and good faith.

2. SAME—*only bona fide purchasers are protected against prior fraud.* Where a deed to land has been obtained by fraud, it is only a *bona fide* purchaser without notice who is protected against such fraud.

3. ESTOPPEL—*when acceptance of an alleged lease by defrauded party does not work estoppel.* That one who has been fraudulently induced to make a deed to his property, but who refuses to deliver possession to the party claiming to be a *bona fide* purchaser, accepts an alleged lease from the latter does not work estoppel, where the alleged lease is but an agreement for a sort of joint occupancy of the premises by the parties until their controversy is settled.

WRIT OF ERROR to the Circuit Court of Champaign county; the Hon. FRANCIS M. WRIGHT, Judge, presiding.

WHITE & DOBBINS, for plaintiffs in error.

LEWIS & LEWIS, THOMAS J. SMITH, ROY WRIGHT, and HERRICK & HERRICK, for defendants in error.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

Plaintiffs in error, Harry E. Stevenson and Mattie A. Stevenson, his wife, filed their bill in the circuit court of Champaign county to set aside a conveyance of their home in Champaign to defendant in error John R. Suma, and a deed by Suma and wife to defendant in error David L. Campbell, on the ground of alleged fraud, by which they were cheated out of the premises. The bill set forth the alleged fraud, and also charged a fraudulent attempt on the part of Campbell to estop them by obtaining a contract from the complainant Harry E. Stevenson in the form of a lease. David L. Campbell, John R. Suma, Cora R. Suma, his wife, and Charles L. Winslow, were made defendants, and answers were filed denying the fraud, and Campbell set up that he was an innocent purchaser of the premises for value without notice, and that complainant Harry E. Stevenson was estopped to deny his title because of the execution of said lease. The issues were referred to a special master in chancery to take and report the evidence with his conclusions. He reported the evidence, with the conclusion "that some of the material allegations of the complainants' bill, necessary to afford the relief prayed in said bill, are not proven by the evidence in the case," and that "the equities of the case are with the defendants." The court referred the cause back to the special master to find facts. The master filed an additional report, but did not find anything on the question of fraud alleged in the bill or as to the alleged fraud in obtaining the lease which was claimed as an estoppel, but reported that before the conveyance to Campbell he knew that complainants had conveyed the premises to the defendant Suma, his grantor, and that he had knowledge complainants were in possession of the premises,

but did not have any actual knowledge of the alleged fraud affecting the deed from complainants to Suma. The court heard the cause upon the report, and entered a decree finding that complainants affirmed the purchase of Campbell by taking a lease of the premises, and that Campbell had no actual notice of the alleged fraud, and dismissing the bill for want of equity at the cost of the complainants.

There is some contradiction in the evidence, but it is mainly on minor questions, and the facts as we find them from the evidence are substantially as follows: Complainant Harry E. Stevenson held the legal title of the lot in question, upon which there was a dwelling house occupied as a homestead, and his wife, the complainant Mattie A. Stevenson, had an equitable interest in the estate to about one-half. The property was worth about $2800 and was subject to a mortgage of $300, and it had been placed in the hands of Cyrus Paul, a real estate agent, for sale. About the first of January, 1898, Paul communicated with J. A. Richards, a real estate agent or trader living in Deland, Piatt county, and Richards, who was acting for the defendant Charles L. Winslow, offered to trade for the premises two notes secured by mortgage. One note was for $1500 and the other for $1650, and they were made by John West and Clara West, and purported to be secured by a mortgage of said John West and Clara West, of the town of Goose Creek, in Piatt county, upon one hundred and sixty acres of land, being lot No. 594 of plat No. 3 of the Alexander Walcott grant, in Johnson county, Kentucky. In pursuance of the offer the complainant Harry Stevenson met Richards in a real estate office in Champaign, and Richards stated that the defendant Winslow had sold this land in Kentucky to West and had taken the notes as part pay; that he had an abstract of the land, but he either said it was in Kentucky or that he had given it to Suma. He represented that Winslow, who had endorsed the notes in

blank, was good, and owned over one hundred and sixty acres in Piatt county; that the notes were good and the Kentucky land improved and cultivated, and worth $50 an acre. So far as these statements related to the value of the notes and mortgage they were all false. John West and Clara West were very poor and had gone to Arkansas. They owned no land and could not pay their board when they left this State, and their household goods were returned to the people from whom they bought them. Neither Winslow nor West ever owned the supposed land in Kentucky, and there was no such land there. If the supposed tract was ever conveyed to the Wests they paid no attention to it but went to Arkansas. Winslow had an interest in some land, but he was not worth anything, and the notes and mortgage were worthless.

The complainant Harry E. Stevenson agreed, on these representations, to make the trade if Richards would satisfy Mr. Garwood, a man who discounted paper, that the papers were all right so that he would discount them. At that time the defendant John R. Suma appeared on the scene, and Richards said that he had traded the papers to Suma. Suma took no interest in the trade, but assented to whatever was done by Richards, who was acting for Winslow; and Richards, Paul, Suma and Stevenson then went to see Garwood. Garwood looked at the papers and asked to keep them until after dinner. Richards and Suma say that Garwood pushed the mortgage aside and said that he cared nothing for that but wanted to look into the papers. Garwood went to the bank and was told by the cashier that Winslow was not strong financially; that he had to sue him for a judgment and that he did not consider the paper gilt-edged. The parties went back after dinner, and Garwood suggested that they should get a printed guaranty, used by the bank, stamped on the note with a rubber stamp and have Winslow sign it, and led Stevenson to believe that he would take the notes. The stamp guaranty was put on

and Richards went to Clinton, Illinois, to get Winslow's
signature. He returned with it and the exchange was
made, and the deed was made by complainants to Suma,
who was a day laborer and had no property. He testi-
fied that he gave Winslow one hundred and sixty acres
in Hays county, Nebraska, and a team worth $100, for
the notes, and made a deed of the Nebraska land to
Richards; that he made no inquiry about the Kentucky
land and knew nothing about it, or whether it was worth
$5 or $50; that he had never seen the Nebraska land
which he traded and had not been told anything about it;
that he did not know who was in possession; that he
paid no taxes on it and did not get any rent for it, and
did not know whether it was wild land or in cultivation.
Suma did not go to see complainants' property, had never
been in the house or on the lot, and did not have the ab-
stract examined. Neither he nor Winslow knew anything
about the property and paid no attention to it.

It is beyond controversy that the notes and mortgage
of the Wests never represented, and were not intended
to represent, any value. The transaction with complain-
ants was a fraud from first to last. Garwood is dead, and
there is no evidence, except hearsay, of his relation to
the transaction. He refused to take the papers after the
trade was closed. As to the parties guilty of the fraud,
or any person who had notice of it, the complainants have
an undoubted right to the relief prayed for.

The deed of complainants to John R. Suma was made
January 8, 1898, and on the 27th day of the same month
Suma and wife conveyed the premises to the defendant
David L. Campbell for the stated consideration of $3000,
subject to the mortgage of $300. Campbell gave for the
premises two notes, of $600 each, and a tract of land
in Kansas, the value of which is not shown, but Camp-
bell testified that he traded a jackass for it, and that he
could tell what the land was worth "if you can tell what
a jackass is worth." Although Suma made the deed to

Campbell and claims that he was the purchaser from Stevenson, yet Campbell made the deed of the Kansas land and the notes to Richards. Winslow also claimed that he bought complainants' property and was up there to look at it with his agent, Richards, who managed the whole business. Campbell had never been in the house when he bought it, did not know the size of the lot, how many rooms there were in the house, how it was lighted or finished, whether with hard-wood or otherwise, whether it was supplied with gas or water or plumbing, or whether there was a well or cistern on the premises. He made no inquiry whether the taxes were paid or the interest on the mortgage. He lived in Champaign, about two and a half blocks from the house. The complainants were in possession, which they had never surrendered, and they had learned at that time that they had been swindled. There is much evidence that Campbell had actual notice of the fraud, but that he thought he could buy as a third party and hold the premises notwithstanding the fraud. He claims that he obtained his information of the fraud later, and that at the time of his purchase he did not know of it. He admits that he made no inquiry whatever of the parties in possession, paid no attention to the matters already detailed, which purchasers ordinarily do not disregard, and does not show that he paid anything like value for the property. It is true that a person in possession may, by delivering a deed of the premises, estop himself from relying upon his possession as evidence to subsequent purchasers that he claims title; but if the possession of complainants would not operate as absolute notice, it is a circumstance to be considered, in connection with other facts, on the question of notice and good faith. The law will protect a *bona fide* purchaser without notice, but in this case we think the evidence shows that Campbell did not occupy that position.

After Campbell got his deed he went to get possession of the premises, and Stevenson refused to give up possession because the controversy was unsettled. Stevenson and his wife occupied the upper part of the house and had been accustomed to rent the lower portion. Campbell got his deed in January, and the following April it was agreed that Stevenson should retain the upper portion and give Campbell possession of the lower part until the controversy was settled, but Stevenson was to have control of the question who should go in, and if not agreeable to him he was to put the tenant out. Stevenson was to have the use of half the garden and the use of the stable and other out-buildings. This agreement was put in the form of a lease April 4, 1898. This contract ran from April 4, 1898, to August 15, 1898, and contained the agreement that no rent was to be paid until September 1, 1898. Stevenson claimed that he was defrauded in obtaining the paper, but while it was put in the form of a lease no rent was to be paid, and the evidence shows that it was nothing but a compromise agreement between the parties, by which they were to have a sort of joint possession until the controversy was settled. Campbell had the house painted by the tenant who occupied the lower part, and he put a piece of tin over a leak in the roof. There was also an attempt to settle the matter by Stevenson offering to exchange some land in Effingham county with Campbell for the premises, but Campbell refused to do it. Stevenson was already in possession claiming title and claiming that he was defrauded, and Campbell had no possession to turn over to him. There is nothing in the agreement to estop him denying Campbell's title.

The decree is reversed and the cause remanded to the circuit court, with directions to grant prayer of the bill.

*Reversed and remanded.*